# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

March 28, 2019

Mr. David Crews
Northern District of Mississippi, Aberdeen
United States District Court
301 W. Commerce Street
Aberdeen, MS 39730

        No. 16-60728    Imperium Insurance Company v. Shelton &
                        Associates, P.A., et al
                        USDC No. 1:14-CV-84

        No. 16-60730    Imperium Insurance Company v. Jason Shelton,
                        et a;
                        USDC No. 1:14-CV-83

Dear Mr. Crews,

Enclosed are copies of the judgments issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Allison G. Lopez, Deputy Clerk
                        504-310-7702

cc:  Mr. James Gregory Brown
     Mr. Leo Joseph Carmody Jr.
     Mr. Kegan Tremayne Coleman
     Mr. Walter Alan Davis
     Mr. John Stuart Robinson Jr.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————————————

No. 16-60728

—————————————

D.C. Docket No. 1:14-CV-84

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2019

Lyle W. Cayce
Clerk

IMPERIUM INSURANCE COMPANY,

Plaintiff - Appellee

v.

SHELTON & ASSOCIATES, PROFESSIONAL ASSOCIATION, A
Mississippi Professional Association; JASON L. SHELTON,

Defendants – Appellants

Appeal from the United States District Court for the
Northern District of Mississippi

Before JOLLY, JONES, and HAYNES, Circuit Judges.

JUDGMENT ON PETITION FOR REHEARING AND REHEARING EN BANC

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that defendants-appellants pay to plaintiff-appellee the costs on appeal to be taxed by the Clerk of this Court.

HAYNES, Circuit Judge, dissenting.



**Certified as a true copy and issued as the mandate on Mar 28, 2019**

**Attest:** *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60728

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2019

Lyle W. Cayce
Clerk

IMPERIUM INSURANCE COMPANY,

> Plaintiff - Appellee

v.

SHELTON & ASSOCIATES, PROFESSIONAL ASSOCIATION, A Mississippi Professional Association; JASON L. SHELTON,

> Defendants - Appellants

---

Consolidated with 16-60730

IMPERIUM INSURANCE COMPANY,

> Plaintiff - Appellee

v.

JASON SHELTON; SHELTON & ASSOCIATES, PROFESSIONAL ASSOCIATION,

> Defendants - Appellants

---

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 1:14-CV-84
USDC No. 1:14-CV-83

No. 16-60728
c/w No. 16-60730

<u>ON PETITION FOR REHEARING AND REHEARING EN BANC</u>

Before JOLLY, JONES, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:*

On petition for rehearing, we WITHDRAW our earlier opinion issued on August 30, 2018 and substitute the following as the opinion of the court.  In this consolidated appeal involving coverage under a legal-malpractice insurance policy, we GRANT the petition for panel rehearing filed by Imperium Insurance Company ("Imperium") based on the question of whether the jurisdictional amount to establish diversity jurisdiction has been met in each of the two cases.  We DENY the petition for rehearing en banc filed by Jason Shelton and his law firm, Shelton & Associates (collectively, the "Shelton Defendants").  On rehearing, we have determined that the amount in controversy has been satisfied and have further determined that coverage was properly denied in each case.[1]  In all other respects, there are no material changes from the initial opinion.

In January 2013, Jason Shelton applied for legal-malpractice insurance on behalf of the Shelton Defendants.  In the application, Shelton represented that he and his attorneys were not aware of any "legal work or incidents that might reasonably be expected to lead to a claim or suit against them."  Relying on Shelton's application, Imperium issued a claims-made insurance policy.  During the policy year, two malpractice suits were filed against Shelton and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The opinion addresses subject matter jurisdiction in Part III.  Revisions to our prior decision on Imperium's declaratory judgment claim are contained in Part IV.B.  Revisions pertaining to the Shelton Defendant's counterclaims are in Part V.

No. 16-60728
c/w No. 16-60730

his firm by former clients.  Shelton sought coverage from Imperium for each of the cases.  Imperium initially provided a defense under a reservation of its rights but later filed these two declaratory-judgment actions in federal court, seeking a declaration that coverage was excluded by the policy's prior-knowledge exclusion or, alternatively, that the policy may be rescinded due to material misrepresentations made in Shelton's application for insurance coverage.  Following discovery, in a single opinion, the district court granted summary judgment in favor of Imperium in both cases.  Shelton appealed both cases, which we have consolidated for purposes of this appeal.  We affirm.

## I.

The insurance policy at issue in these appeals is a claims-made policy.[2] The policy provides coverage for malpractice claims arising out of "wrongful acts" committed by the insured.  The policy excludes, however, coverage for claims arising out of wrongful acts occurring prior to the effective date of the policy if the insured "knew or could have reasonably foreseen" that the wrongful act for which coverage is sought "might be expected to be the basis of a claim."  When filling out the insurance application in January 2013, Shelton was asked:  "After inquiry, are any attorneys in your firm aware . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them?"  Shelton answered, "No."  Imperium claims that Shelton's answer was a material misrepresentation that entitles Imperium to rescind the policy.  Specifically, Imperium argues that the Shelton Defendants knew

---

[2] "'Claims-made' policies are distinct from 'occurrence' policies; the latter focus on whether an insured event occurred as specified during the policy period.  The former focus on the date that the claim was made against the insured."  *OneBeacon v. T. Wade Welch & Assocs.*, 841 F.3d 669, 672 n.1 (5th Cir. 2016) (citing *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378, 379 n.7 (Tex. 2009)).

No. 16-60728
c/w No. 16-60730

of the facts surrounding the representation of those two clients who ultimately filed malpractice suits against the Shelton Defendants, yet failed to disclose the two potential malpractice claims. The first malpractice suit was brought by the bankruptcy estate of Paul Tyler. The second malpractice suit was brought by the estate of Mamie Katherine Chism.

## A.

We turn first to the facts forming the basis of Paul Tyler's malpractice claim against the Shelton Defendants.

By way of background, in 2004, the Shelton Defendants represented Tyler in an adversary proceeding in bankruptcy court brought by Automotive Finance Company (AFC) against Tyler's bankruptcy estate. William Griffin was the Shelton & Associates attorney in charge of the Tyler case. Sometime in 2004, however, Griffin left the firm, taking the Tyler file with him. In 2005, the bankruptcy court dismissed the adversary proceeding without prejudice, and in 2006 AFC filed the same action anew against Tyler in state court.

On May 24, 2007, AFC served Tyler with discovery requests, including requests for admissions. No response was submitted. On July 9, 2007, AFC moved to have its requested admissions deemed admitted due to the failure to respond. A hearing was set for November 2.

On October 29, however, Tyler returned to Shelton & Associates as a client for representation in the state-court litigation. A Shelton attorney entered an appearance in state court on behalf of Tyler on that day and requested a continuance of the hearing. The court granted the continuance, resetting the hearing on the motion to January 30, 2008. Leading up to the January hearing, however, Shelton & Associates did not move to set aside the admissions or otherwise correct the failure to respond to AFC's discovery requests.

4

No. 16-60728
c/w No. 16-60730

During the January 2008 state-court hearing, Tyler did not show up to testify. So one of the Shelton attorneys informed the court: "Your honor, [Tyler] has no response [to the motion], no response at all, your Honor." The state court then entered an order deeming all of the requests admitted.

In September 2010, AFC filed a motion for summary judgment against Tyler. A state-court hearing on the motion was set for March 21, 2011. AFC served notice of the motion and hearing to a former Shelton attorney who was no longer with the firm. AFC discovered its mistake and re-served the notice on Shelton & Associates on February 2, 2011. The Shelton Defendants claim, however, that they did not actually receive the notice.

On March 21, 2011, the state court held its hearing on AFC's motion for summary judgment. No one from Shelton & Associates showed up at the hearing. One of Shelton's attorneys, Amanda Daniels, was at the courthouse that day, working on a separate matter. At the courthouse, AFC's counsel spoke with Daniels about the hearing that day. Instead of attending the hearing and objecting, for example, that service had not been received, Daniels left the courthouse and did nothing. So the state court granted AFC's motion for summary judgment, specifically "noting that no reply or response whatsoever has been filed by [Tyler] in opposition" to summary judgment. The judgment against Tyler was entered, setting the amount at around $2.9 million, plus interest at the highest legal rate.

Three days later, on March 24, 2011, Shelton filed a motion to set aside the judgment against his client, Tyler. And on November 29, half a year after the judgment and a full three years after the original hearing to have the unanswered requests deemed admitted, Shelton filed a motion to amend Tyler's response to AFC's request for admissions. In his motion, Shelton

No. 16-60728
c/w No. 16-60730

argued that he had not received proper service or notice of any of the hearings or motions.

On January 31, 2012, the state court denied both motions.  The state court found that the Shelton Defendants, and thus Tyler, had received proper notice of the summary-judgment motion and hearing.  The Shelton Defendants appealed the state court's decision to the state appellate courts.

On January 8, 2013, less than a year later, Shelton filled out his application for malpractice insurance with Imperium.  He represented in his application that, after inquiry, neither he nor any of his attorneys were "aware . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them."  On January 28, Imperium accepted the policy.  On February 1, the policy went into effect.

In the meantime, the Shelton Defendants' appeal of the judgment against Tyler moved up through the Mississippi appeals courts.  On April 4, 2013, the Mississippi Supreme Court affirmed the judgment against Tyler, expressly rejecting the Shelton Defendants' arguments that they had not received proper service; the state supreme court also called attention to the Shelton Defendants' poor handling of the litigation.  *See Tyler v. Auto. Fin. Co.*, 113 So.3d 1236, 1240–41 (Miss. 2013).

In January 2014, some ten months later, Tyler filed a malpractice suit against the Shelton Defendants.  Tyler alleged that the Shelton Defendants committed malpractice by, among other things, failing to respond to the requests for admission; failing to move to withdraw or amend the admissions; failing to respond to AFC's motions to have the requests deemed admitted; and failing to respond to AFC's motion for summary judgment.

No. 16-60728
c/w No. 16-60730

## B.

We turn next to the malpractice claim arising out of the Shelton Defendants' representation of the estate of Mamie Katherine Chism in a wrongful-death action against the manufacturers of the prescription drug Vioxx.

In 2007, Chism's niece, Margaret Bailey, retained the Shelton Defendants to represent Chism's estate after Chism died from a heart attack, allegedly caused by her use of Vioxx. The Shelton Defendants filed a wrongful-death action in state court on behalf of Chism's estate. The case was eventually removed to federal court and transferred to the Vioxx multi-district litigation (MDL).

In early 2008, the manufacturer agreed to settle all claims pending in the MDL court. To successfully enroll in the settlement program, each claimant was required to submit documentation, including proof that the claimant actually took Vioxx for a certain amount of time. Despite having several months to do so, the Shelton Defendants failed to submit the required documentation by the July 1, 2008 deadline.

More than a year later, in August 2009, Shelton met with the representative of Chism's estate, Bailey, and informed her that the claim had not been timely filed and apologized for "not communicating effectively with her" about the claim. A few days later, Shelton stipulated to the dismissal of Chism's claim with prejudice, and the stipulation was filed with the MDL court.

Two months later, in October 2009, Shelton filed a petition in the MDL court to permit Chism to either opt out of the settlement program or submit late documentation. But the MDL court denied the petition, along with similar petitions that Shelton had filed on behalf of his other Vioxx clients.

No. 16-60728
c/w No. 16-60730

Two years later, in 2011, the new representative of Chism's estate, Karen Caviness, visited Shelton's office. Caviness informed one of Shelton's employees that she had recently come to learn why the estate's claim was dismissed and stated that she was "disappointed."

As stated previously, on January 8, 2013, Shelton applied for malpractice insurance, representing that he and his attorneys were not "aware . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them." On January 28, Imperium accepted the policy, with an effective date set for February 1.

Also on January 28, a lawyer representing one of Shelton's former Vioxx clients, James Harbin, submitted a demand letter to the Shelton Defendants, alleging malpractice due to their failure to timely file a claims package in the Vioxx settlement program. The letter informed Shelton that the lawyer would be "investigating whether there are other former clients who have a potential claim based on a similar theory." Upon receiving the letter, Shelton forwarded it to Imperium. A few days after that, Imperium issued an "incident exclusion" for any malpractice claim arising out of the Harbin incident. The Shelton Defendants did not inform Imperium of any other potential claims from other Vioxx claimants.

Less than a year later, Chism's estate filed a malpractice suit against the Shelton Defendants in state court. Chism's estate alleged that it had "provided all information to [Shelton] that were [sic] needed in order for Mamie Chism's estate to recover a settlement in the Vioxx litigation." But, according to the allegations, Shelton & Associates was "in turmoil," the attorneys "largely absent," and "the task of compiling and submitting information related to the firm's many Vioxx clients [was delegated] to non-attorney staff members." The complaint further states that, as a result, Shelton did not complete the work

No. 16-60728
c/w No. 16-60730

necessary for Chism's estate to participate in the Vioxx settlement and its claims were dismissed. Chism's estate sought a "judgment against Defendants in an amount in excess of $50,000.00 for compensatory damages, punitive damages, costs, attorney's fees and pre and post judgment interest."

## C.

The Shelton Defendants reported both malpractice claims to Imperium, seeking coverage. Imperium initially provided a defense, subject to its right to contest coverage issues later. While the state-court litigation was proceeding, Imperium separately filed these two declaratory-judgment actions in federal court, seeking a declaration that the Shelton Defendants were not covered under the policy. The Shelton Defendants asserted counterclaims against Imperium, alleging that Imperium denied coverage in bad faith.

Following discovery, Imperium moved for summary judgment, arguing that the policy's prior-knowledge exclusion applies and, alternatively, that Imperium is entitled to rescind the policy due to Shelton's failure to disclose the potential *Tyler* and *Chism* claims in the insurance application. The district court granted Imperium's motion. Additionally, because an insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim, the district court also granted summary judgment in Imperium's favor, denying Shelton's bad-faith counterclaims.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *OneBeacon*, 841 F.3d at 675. Summary judgment is appropriate if there is "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the

9

No. 16-60728
c/w No. 16-60730

nonmoving party. *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). This court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Id.*

III.

We address first the question of jurisdiction. "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). The amount in controversy, exclusive of costs and interest, must exceed $75,000. *See* 28 U.S.C. § 1332(a).

In a declaratory judgment action, the amount in controversy "is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252–53 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). In a suit seeking a declaratory judgment regarding insurance coverage, "'the object of the litigation is the policy' and the 'value of the right to be protected is [the] plaintiff's potential liability under that policy.'" *Id.* at 1253 (quoting *Allstate Ins. Co. v. Hilbun*, 692 F.Supp. 698, 700 (S.D. Miss. 1988)). In determining the amount in controversy, we therefore consider the "policy limits[,] potential attorney's fees, . . . penalties, statutory damages, and punitive damages." *Id.* The burden is on the party invoking federal jurisdiction to prove, by a preponderance of the evidence, that the jurisdictional amount in controversy is met. *Id.*

No. 16-60728
c/w No. 16-60730

Here, there is complete diversity of citizenship between the parties.[3]  To determine whether the amount in controversy is met, we "first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount."  *Id.*  Tyler seeks a total judgment of $4,120,367.09 in his state-court malpractice action, and therefore it is plain that we have subject matter jurisdiction over the *Tyler* action.

The *Chism* case presents a less apparent amount.  In the state court action, the Chism estate's pleadings seeks a "judgment against Defendants in an amount *in excess* of $50,000.00." (emphasis added).  That amount does not in clear terms satisfy the statutory minimal requirement for jurisdiction.  We therefore turn to "summary-judgment type" evidence to determine if the jurisdictional amount is met.  *See id.*; *see also* 28 U.S.C. § 2108 (allowing consideration of "other competent evidence" when deciding the amount in controversy).  During the deposition of Karen Caviness, the representative of Chism's estate, her lawyer expressly represented that the value of the estate's Vioxx claim was $200,000.  Neither party disputed this amount.  To the contrary, the Shelton Defendants and the Chism estate have admitted in pleadings that the amount in controversy is met.  This representation, combined with the parties' admissions, is sufficient evidence to clarify that the amount in controversy is met. We therefore possess subject matter jurisdiction over the *Chism* action.

IV.

We will now turn to the merits of the malpractice claims.  On appeal, Imperium reiterates its earlier position that the policy's prior-knowledge

---

[3] Imperium is a Texas corporation.  Shelton is a citizen of Mississippi and Shelton & Associates is a Mississippi corporation.

No. 16-60728
c/w No. 16-60730

exclusion applies.[4]  Additionally, and in the alternative, Imperium asserts that the policy may be rescinded based on Shelton's material misrepresentation to Imperium when he failed to disclose the potential *Tyler* and *Chism* claims in the application for insurance back in January 2013.[5,6]

Mississippi law applies in this diversity case.  "Under Mississippi law, if an applicant for insurance is found to have made a misstatement of material fact in the application, the insurer that issued a policy based on the false

---

[4] The prior knowledge-exclusion states that:

> This policy does not apply to:
>
> . . . .
>
> any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if:
>
> . . . .
>
> the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.  However, this [exclusion] does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM.

[5] The application asked whether, "After inquiry, are any attorneys in your firm aware . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them?"

[6]  The district court granted summary judgment on the basis that Imperium was entitled to rescind the policy because Shelton made a material misrepresentation concerning the *Chism* claim.  The district court further found that the policy's prior-knowledge exclusion applies to both the *Tyler* and *Chism* claim.  Imperium, however, also raised below the material misrepresentation issue as to the *Tyler* claim and sought rescission of the policy on that basis.  "We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."  *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).  We rule on alternative grounds here because it appears that Mississippi courts have not yet definitively addressed prior-knowledge exclusions; Mississippi courts have, however, developed a body of case law on material misrepresentations made in the course of purchasing insurance policies. *See, e.g.*, *Prudential Ins. Co. of Am. v. Russell's Estate*, 274 So.2d 113 (Miss. 1973).

No. 16-60728
c/w No. 16-60730

application is entitled to void or rescind the policy." *Carroll v. Metro. Ins. & Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999). "To establish that, as a matter of law, a material misrepresentation has been made in an insurance application, (1) it must contain answers that are false, incomplete, or misleading, *and* (2) the false, incomplete, or misleading answers must be material to the risk insured against or contemplated by the policy." *Id.*; *see also Bullock v. Life Ins. Co. of Miss.*, 872 So.2d 658, 661 (Miss. 2004). A material misrepresentation must be established by clear and convincing evidence. *Carroll*, 166 F.3d at 805. "Whether the misrepresentation was intentional, negligent, or the result of mistake or oversight is of no consequence." *Id.* We address each case in turn.

A.

We begin with the *Tyler* claim.

1.

First, the "misrepresentation." In January 2013, Shelton filled out an insurance application, which contained the following question: "After inquiry, are any attorneys in your firm aware . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them?" Shelton answered, "No." The parties dispute whether Shelton's answer was a misrepresentation.

Imperium argues that when Shelton filled out the application, Shelton and the attorneys in his firm were (1) aware of legal work that (2) might reasonably be expected to lead to a malpractice claim. Imperium focuses on Shelton's representation of Paul Tyler in the state-court lawsuit filed against Tyler by AFC. When Shelton resumed representation of Tyler in October 2007, Shelton knew that no one had responded to AFC's requests for admissions and that there was a pending hearing on AFC's request to have those admissions

13

No. 16-60728
c/w No. 16-60730

deemed admitted. The Shelton Defendants successfully moved for a continuance of the hearing but, during the three months leading up to the hearing, made no effort to amend or otherwise rectify Tyler's failure to respond to AFC's admission requests. In January 2008, at the hearing, the Shelton Defendants informed the court that Tyler had "no response at all" to AFC's motion to deem the discovery requests admitted. In September 2010, over two years later, AFC filed a motion for summary judgment on those admissions. A hearing was set for March 21, 2011. Although a notice of the hearing was not properly served initially, notice was properly served on Shelton & Associates on February 2, 2011. Still, no one from Shelton & Associates responded to AFC's motion for summary judgment. On the day of the hearing, one of Shelton's attorneys was present at the courthouse, informed of the hearing, and yet did nothing. The state court granted AFC's motion for summary judgment against Tyler, almost $3 million at the highest interest rate, on the basis of the admissions and Tyler's failure to respond to the motion for summary judgment. Although the Shelton Defendants filed a motion on behalf of Tyler to set aside the judgment and, eight months later, filed a motion to amend Tyler's response to AFC's request for admissions, the state court denied both motions, explicitly rejecting the Shelton Defendants' argument that notice had not been received. Imperium argues that there is no dispute of fact that any reasonable attorney with awareness of the above facts would conclude that a malpractice claim "might reasonably be expected."

The Shelton Defendants do not dispute knowledge of these facts. Instead, they argue that knowledge of the facts would not lead a reasonable attorney to expect a malpractice claim. They insist that there is a genuine dispute of fact as to whether their "legal work . . . might reasonably be expected to lead to a claim or suit" of malpractice. Specifically, they blame the failure

14

No. 16-60728
c/w No. 16-60730

to respond to AFC's request for admissions on one of Tyler's former attorneys. Further, and contrary to the record evidence, the Shelton Defendants insist that they did not receive proper notice of the summary-judgment motion or hearing. Finally, they argue that there was a substantial delay in Tyler's bringing suit, justifying a reasonable belief that no claim was possible.

We hold that, under the facts outlined above, every reasonable attorney aware of these facts would know that such facts "might reasonably be expected to lead to a claim or suit." First, even though it is true that a prior attorney failed to respond to the discovery requests, the Shelton Defendants had months to rectify Tyler's failure to respond to AFC's request for admissions. They did nothing. Instead, they waited until half a year after the entry of judgment against Tyler, which was a full three years after Tyler failed to respond to the discovery requests. The Shelton Defendants could have made all of the arguments they raise now to the state court during the hearings, but they did not do so. The Mississippi Supreme Court, in particular, found "damning" the statements of the Shelton attorney at the hearing to have the requests admitted. Instead of objecting that service was improper, the attorney stated, "Your honor, [Tyler] has no response, no response at all, your Honor." *See Tyler*, 113 So.3d at 1240–41. With respect to the hearing on the motion for summary judgment, Amanda Daniels, the Shelton attorney present at the courthouse on the day of the hearing on the motion for summary judgment, had an opportunity to appear on Tyler's behalf and to object to the hearing on the basis of lack of notice. But she did not. Instead, she left the courthouse, saying nothing. The state court entered summary judgment on the basis of the admissions and lack of response.

Second, the Mississippi state courts have consistently rejected the Shelton Defendants' arguments that they did not receive proper service or

No. 16-60728
c/w No. 16-60730

notice of the motions or hearings. Knowledge of those rejections would put any reasonable attorney on notice that a malpractice claim "might reasonably be expected."[7] Any reasonable attorney would know that a judgment of $2.9 million entered against his client based in substantial part on his failure to respond to, or even show up at a hearing for, a dispositive motion would be reasonably likely to lead to a malpractice claim. This conclusion is especially apparent when, as here, the state court has rejected all of the attorney's arguments in defense.

Third, and finally, there simply was no delay in Tyler's raising a claim. Less than a year had passed between the $2.9 million judgment against Tyler and Shelton's application for malpractice insurance. The Shelton Defendants were appealing the judgment against Tyler when Shelton applied for insurance with Imperium. Ten months later, Tyler brought his malpractice claim.

Therefore, we conclude that Shelton made a misrepresentation when he represented that he was not aware of any "legal work or incidents that might reasonably be expected to lead to a claim or suit."

2.

Next, we turn to the "materiality" element. In Mississippi, "[a] misrepresentation in an insurance application is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk." *Carroll*, 166 F.3d at 805. "Stated differently, a fact is material if it might have led a prudent insurer to decline the risk, accept the risk only for an increased premium, or otherwise refuse to issue the exact policy requested by the applicant." *Id.* For example, had the insurer known the

---

[7] Moreover, the record confirms that notice of the hearing was served on the Shelton Defendants on February 2, 2011.

No. 16-60728
c/w No. 16-60730

truth, and if the insurer would have not issued the policy at all or would have issued the policy only with a higher premium, then the falsity is material. *See Jones-Smith v. Safeway Ins. Co.*, 174 So.3d 240, 241, 245 (Miss. 2015) (en banc); *Safeway Ins. Co. v. Dukes*, 185 So.3d 977, 978–79 (Miss. 2015).

Here, the record reflects that Imperium introduced deposition evidence from the insurance agent who procured the insurance policy for Shelton. The agent testified that, had Imperium known of the *Tyler* facts, "it would have either resulted in approval pending an incident exclusion, higher premium or a denial to write the risk at all." Shelton has pointed to no evidence in rebuttal and thus fails to show a genuine dispute of material fact as to materiality. *See State Farm Fire & Cas. Co. v. Flowers*, 854 F.3d 842, 844 (5th Cir. 2017) ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))); *see also Nappier v. Allstate Ins. Co.*, 961 F.2d 168, 170 (11th Cir. 1992) (holding that an uncontradicted affidavit of the insurer's representative, stating that the insurer would not have issued a policy had it known the truth, was sufficient to preclude any genuine issue of material fact, and thus summary judgment as to materiality was proper).

In sum, because Shelton made a material misrepresentation in his application for insurance by failing to disclose the potential *Tyler* claim, Imperium is entitled to rescind the policy and the district court judgment in favor of Imperium in the *Tyler* matter is affirmed.

## B.

We turn now to the *Chism* action and hold that Imperium is also entitled to summary judgment because the insurance policy is voidable. Our decision is not based upon failure of Shelton to disclose the *Chism* claim. The result of

17

No. 16-60728
c/w No. 16-60730

Shelton's misrepresentation concerning the *Tyler* matter is that Imperium may rescind the Shelton Defendant's insurance policy in its entirety.  *See Carroll*, 166 F.3d at 805 ("Under Mississippi law, if an applicant for insurance is found to have made a misstatement of material fact in the application, the insurer that issued a policy based on the false application is entitled to void or rescind the policy."); *see also Coffey v. Standard Life Ins. & Annuity Co. of the S.*, 120 So.2d 143, 148–49 (Miss. 1960) (holding material misrepresentations in an insurance application gave the insurer the "right to declare null and void the insurance").  This rescinded policy is the only policy that would have covered the Chism estate's malpractice claim.  There is simply no surviving or extant policy to cover the Chism estate's claim against Shelton's malpractice.  Consequently, Imperium is not under any duty to pay the claims brought by the Chism or Tyler estates against the Shelton Defendants.[8]  The Chism estate's relief must come from the Shelton Defendants themselves.  The district court judgment in favor of Imperium in the *Chism* case is thus affirmed.

## V.

Finally, we turn to the Shelton Defendants' bad-faith counterclaims.  In Mississippi, "[a]n insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim."  *Stubbs v. Miss. Farm Bureau Cas. Ins. Co.*, 825 So.2d 8, 13 (Miss. 2002).  Because we affirm

---

[8] On first impression it may seem unfair to permit Imperium to deny coverage for the *Chism* claim because of Shelton's misrepresentations regarding the unrelated *Tyler* claim. That Shelton's material misrepresentation regarding his malpractice conduct allowed Imperium to void a policy that may have otherwise covered many claims against the Shelton Defendants is indeed unfortunate.  But here it is equally "unfair" to both victims of Shelton's alleged malpractice—the estates of Tyler and Chism—neither of whom committed a wrong nor are responsible in any way for the policy's rescission.  But the bottom line result is that, once rescinded, there is no insurance available to cover claims brought by any of Shelton's former clients.

No. 16-60728
c/w No. 16-60730

the district court's holding that the policy does not provide coverage with respect to the *Tyler* and *Chism* claims, we also affirm the district court's holding that the Shelton Defendants' counterclaims cannot survive.

## VI.

In sum, we hold that Shelton made material misrepresentations when he applied for insurance in January 2013 regarding the *Tyler* matter. Accordingly, under Mississippi law, Imperium is entitled to rescind the policy. We therefore AFFIRM the district court's grant of summary judgment for Imperium with respect to both actions. We further AFFIRM the dismissal of the Shelton Defendants' counterclaims.

AFFIRMED.

No. 16-60728
c/w No. 16-60730

HAYNES, Circuit Judge, dissenting:

I concur in the portion of the revised judgment concluding that we have jurisdiction as to the *Chism* claim. Because there is a genuine issue of material fact as to whether Shelton made a misrepresentation by failing to disclose the *Tyler* action as a potential claim in his application for malpractice insurance, I respectfully dissent from the judgment affirming the *Tyler* claim. As a result, I also dissent from the judgment affirming the *Chism* claim because it relies upon the findings as to the *Tyler* claim.

The majority opinion focuses primarily on three facts to conclude that "every reasonable attorney aware of the facts would know that such facts 'might reasonably be expected to lead to a claim or suit'": (1) an attorney with Shelton & Associates responded that Tyler had "no response at all" to the motion to have the requests for admissions deemed admitted, (2) the firm failed to respond to the motion for summary judgment, and (3) Ms. Daniels, who was present at the courthouse on the day of the summary judgment hearing, failed to make an appearance on Tyler's behalf. Maj. Op. at 13–14. Because this is a summary judgment, all of these facts must be viewed in the light most favorable to the Shelton Defendants. *See Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). While any of these events arguably *could* put a reasonable attorney on notice that a malpractice claim may reasonably be expected, I do not agree with the majority opinion's conclusion that they *necessarily* do so.

First, the Shelton Defendants have outlined a plausible strategy behind their actions at the hearing on the motion to have the requests for admission admitted. The Shelton & Associates attorney representing Tyler investigated various strategies to get the admissions set aside, including whether there was

No. 16-60728
c/w No. 16-60730

a legitimate factual basis on which to deny the requests for admission. The
attorney determined that the best course of action would be for Tyler to testify
at the hearing and defend the motion, even though Tyler could not deny many
of the requests. When Tyler did not attend the hearing, the attorney did not
believe he had the necessary information to defend the motion, leading to the
statement that Tyler did not have a response. Under those circumstances,
where the lawyer depended on the client to attend and defend the motion and
the client did not attend, a reasonable attorney could believe that there was
not a basis for a malpractice suit. Further, because it was apparent that many
of the requests—perhaps the most damning of them—could not be denied, a
reasonable attorney would not necessarily anticipate a malpractice suit by not
immediately making a motion for leave to amend the request for admissions.

Second, with respect to the issue of whether the Shelton Defendants
were served with notice of the summary judgment hearing, the summary
judgment ruling was on appeal at the time that Shelton applied for malpractice
insurance. The majority opinion rejects that the appeal makes any difference,
because "the Mississippi state courts have consistently rejected the Shelton
Defendants' arguments that they did not receive proper service or notice of the
motions or hearings." Maj. Op. at 15. But every case is different. Because of
confusion created by an attorney leaving the firm and the varied
representation of Tyler that resulted, the Shelton Defendants could reasonably
believe they could prove that they had not received actual notice and that the
district court had made an inaccurate ruling as to whether service had been
proper. I cannot agree that Mississippi courts rejecting similar contentions in
other cases would have put the Shelton Defendants on notice that a
malpractice claim may be reasonably expected while their case was still on

No. 16-60728
c/w No. 16-60730

appeal.  Furthermore, Tyler's failure and inability to assist in the request for admissions set aside also impacted the merits of the summary judgment motion.

Third, it cannot be that the presence of Ms. Daniels at the courthouse on the day of the summary judgment hearing for a different case would put every reasonable attorney on notice that a malpractice claim may reasonably be expected.  Neither party claims that Ms. Daniels knew anything of *Tyler* prior to being at the courthouse.  She only learned from a third party, that day, that the case existed.  When she looked up the files, she believed that a former associate of Shelton & Associates was working on the case, and she testified that the third party did not think Shelton & Associates was working on *Tyler*.  Therefore, she left the courthouse when she had completed her work there.  Ms. Davis had investigated multiple sources and did not believe that Shelton was working on the case; therefore, she would not have known that she should attend the hearing and object for any reason (such as lack of notice).  A reasonable attorney could say that this instance was not reasonably likely to result in a malpractice suit.

In sum, while the Shelton Defendants could have, and likely should have, handled aspects of the *Tyler* claim differently, assuming the facts in a light most favorable to the Shelton Defendants, these are not clear instances where *every* reasonable attorney would reasonably expect a malpractice claim.  This is a factual question for the jury on which Imperium would have the burden of proof.  Accordingly, I respectfully dissent from the portion of the judgment concluding that Shelton made a misrepresentation to Imperium in applying for malpractice insurance.

No. 16-60728
c/w No. 16-60730

Because of my conclusion above, I turn to Imperium's other argument for affirmance which was not addressed in the majority opinion: that the Shelton Defendants violated the policy's prior-knowledge exclusion. The prior-knowledge exclusion states that the policy does not apply to "any claim arising out of any wrongful act occurring prior to the effective date of th[e] policy if . . . the insured at or before the effective date knew or could have reasonably foreseen that such wrongful act might be expected to be the basis of a claim." Our decision in *OneBeacon Insurance Co. v. T. Wade Welch & Associates*, 841 F.3d 669 (5th Cir. 2016), guides the analysis here.[1] There, we interpreted a prior-knowledge exclusion in a claims-made malpractice policy to apply only to a "'wrongful act' reasonably likely to lead to a malpractice claim." 841 F.3d at 677. A claims-made lawyer malpractice policy would be worth virtually nothing if knowledge by the attorney that he had committed an act or omission coupled with a later malpractice lawsuit based upon that act or omission were enough to defeat coverage.

The standard in *OneBeacon* avoids the circularity that would result from Imperium's approach. As discussed with respect to the misrepresentation analysis, Imperium has not proven that any of the alleged "wrongful acts" would have been reasonably likely to lead to a malpractice claim. Therefore, the prior-knowledge exclusion does not provide an alternative basis to affirm.

Accordingly, I respectfully dissent from the judgment affirming the district court.[2]

---

[1] Although *OneBeacon* applied Texas law, no material difference between Texas and Mississippi law exists in this instance, as conceded by the parties at oral argument.

[2] Because this conclusion affects the disposition of the Shelton Defendants' bad-faith counterclaims, I would vacate and remand those claims pending the outcome of this case.